And we'll hear the next matter, Ahir v. Lynch, 134031. Mr. Sam. Good morning, Your Honors. If it pleases the Court, on behalf of Ruxa Ben Ahir, the petitioner, the issue over here is an ineffective assistance of counsel who passed away whether the BIA precedent case of Lozado applies. That was the reason why the Board of Immigration Appeals and the immigration judge denied the motion to reopen. We don't understand how you can file a Lozado motion against a dead lawyer, and that's the issue in our mind that... That's the ineffective assistance of counsel. That is her allegation she made in her declaration. She hired him. She paid him money. He did nothing. The BIA statement was wrong that Mr. O.J. Seavers did absolutely nothing. He did nothing except take her money, which she relied on and detrimentally relied on in not hiring another attorney. I know she presented evidence that she had hired a lawyer. What I'm suggesting is the BIA rejected her claim on part on the grounds that she had not presented evidence that her alleged former attorney actually represented her when she had actually in fact submitted an affidavit. Wasn't that an erroneous statement in the BIA opinion? It was. The other issue is everything in this, unfortunately, was not done correctly. Even the original 1995 immigration judge's decision made it impossible for this petition to receive notice. She had no address. She was an alleged 16-year-old.  There's no address of the interpreter. The judge deported her in absentia in 1995. It was impossible for her to get notice. There was no address. There was absolutely no information she could get. She went and took an affirmative act of hiring attorneys. She has like a jigsaw puzzle, resurrected, created this whole file, diligently worked, appeared before this court to present her case as she did before the airport in 1995 in October where she alleged her mother was killed in India by the present political party. In India right now, the party of Janata Party. That is why she has a well-founded fear of going. Before the judge, the government did not address the issue of changed circumstances. In fact, the immigration judge, when he denied the motion, felt the documentation did not reflect that the BJP Party was a serious party that was going to come into power. That was in 2012. Is it correct that there was no evidence of country conditions in existence in 1995? The country conditions every year, Your Honor, provided by the United States Department of State every year. There is no evidence in this case. There is no evidence of any country conditions ever presented in this case for 1995 except her statement at the airport to the immigration naturalization service officer that her mother was murdered. I take it, but perhaps I'm wrong in your correctness, that part of the analysis was that without evidence of what the country conditions were in 1995, you couldn't show a change in the country conditions. Am I right or wrong about that? Well, I don't know how to address that. I think you can show changes by showing her personal facts that she could return right now, that nobody is going to harm her, that the murderers who murdered her mother have been apprehended, and the party and the people who had killed her family member were locked behind bars. Well, those are changes in personal, relating to her personal condition, but changes in country condition without any evidence of what the conditions were in 1995. I guess you're saying that there was some evidence from something that she submitted. But without any further evidence, I think that the analysis was you haven't proven a change in conditions since 1995. Do you understand that? I understand that she has a fear, and going back, there was no change in her mind. She was let out based on an officer's evaluation. She had a well-founded fear of returning to India where she would be killed. An asylum officer or an immigration officer at the airport made that finding. But once you say that there was no change in her mind, isn't that problematic? Actually, it's not problematic for her because she felt from her first day she wanted to present her case before a court. She was unable to. She wanted to present her facts to show how her mother had been murdered and why she had been murdered for helping the minority population in her state of Gujarat, and she was unable to. She never, ever had a hearing. That's another issue. The third issue is changed circumstances, and the court felt that basically the documents showing that the BJP were going to come to power weren't sufficient. And that was the basis. The government didn't oppose the changed circumstances, didn't even address it before the immigration judge. I think there's a slightly different subject. This is a substantial argument that the BIA applied an incorrect standard here in holding her to a 180-day rule, which is applicable to the motions to rescind in absentia orders of removal. But in her case, it was not an in absentia order of removal. It was an in absentia order of exclusion, and the 180-day limitation does not apply to in absentia orders of exclusion. What about that? Do we agree, Jan? That is correct. You agree, except that in your brief, both before the BIA and before the immigration judge and, frankly, in our appeal, you seem to embrace the idea of an 180-day time limitation. We were relying on the detrimental reliance of O.J. Seavers telling her he's done his work, he's protected her, she doesn't need to appear in New York. Our main emphasis was the ineffective assistance of counsel that O.J. Seavers had told her, don't worry, you don't need to go to New York, your hearing has been taken care of. That was the thrust of that argument at that time to show that it was an ineffective assistance of counsel and she should be put back in the same situation she was in 1995. Anything further? No, Your Honor. Thank you. You've reserved three minutes of rebuttal. Thank you. Good morning, Your Honors. Raya Jarawan for the respondent, the U.S. Attorney General. What about the question I raised with your adversary? Didn't the BIA impose an incorrect standard applying the 180-day time limitation, which is applicable to in absentia orders of removal but not to in absentia orders of exclusion? That's correct. As we stated in our brief, the Board did err in applying the removal standard versus the exclusion standard. However, as we explained in our brief as well, the remand in order to apply that correct standard is futile because the due diligence component is the significant dispositive factor of this case. The Court has held that due diligence is important not only in the equitable tolling standard for motions to reopen but also in motions to rescind where there is no time limit. And here, as due diligence was properly analyzed extensively by the Board, there is no reason. It would be moot to remand this case simply to apply a standard where the analysis is already present. In this case, Your Honors, there is— Was the Board's rejection of an ineffective assistance of counsel claim? Yes, the Board did reject her claim. Was the grounds on which they rejected her claim correct? Well, the claim that she makes is simply based on her own statements. She does not comply fully with all the procedural requirements of Matter of Lazada. However, in this case, that is actually not the dispositive factor. Again, the due diligence is the dispositive factor. The fact that she waited 15 years between 1995 when she entered this case— And the reason for the delay was ineffective assistance of counsel. And so, the Board says that she's not presenting evidence that a former attorney actually represented her when she did. She maintained that he was her attorney, and yet she apparently found out that he was deceased in 2009 or 2010, but he had been deceased as of 2006, meaning she had made no effort to communicate or to find out what had been going on in her case. And the standard under Wang is when would a reasonable person have discovered her attorney's ineffectiveness. And certainly, a reasonable person would not have expected a hearing to have taken 10 years or more to be scheduled. And in this matter, it's not reasonable for an individual to rely on an attorney who does not give her any information about her hearing, despite the fact that she was personally served with her notice, claiming that she had a hearing within just a few months. And the notice itself said that she would not receive another notice, and it was interpreted for her. So, her personal service is very clear. She was notified that she had a hearing and that she was supposed to be there within a few months. Now, immediately, she leaves the jurisdiction, hires a new attorney, hires an attorney, and yet, for over a decade, makes no effort, based on the record, to find out what is happening in her case. This is different analytically from a failure to exhaust argument. Yes. I mean, she certainly failed to exhaust the board's error in regards to the standard that was used, but that is not the dispositive issue. Even assuming she exhausted that argument, there still is a dispositive issue. Well, if she failed to exhaust, how would we have jurisdiction? Well, she failed to exhaust. To get to a dispositive merits-based issue. Well, she failed to exhaust only one aspect of this case. She failed to exhaust the. . . But you said as to both aspects, due diligence is the dispositive issue. Is that correct? She exhausted that issue. I mean, that issue has always. . . She's always discussed the fact that she has made her efforts to contact her attorney. On that issue. And then there is the separate issue of the 180-day filing. Right. The government is only contending that she failed to exhaust the error that the board made in regard to the standard that was used. That's the only argument that the government made in regards to failure to exhaust. And the government made the alternative argument because, quite frankly, that's not the important issue. But you started out in connection answering Judge LaValle's question by referring to due diligence, which is a dispositive, as you put it, issue that's a merits-based issue. That's correct. Okay. But ultimately, your argument with respect to that issue is failure to exhaust. No, no. I apologize if I misargued that issue. I'm not arguing anything in regards to failure to exhaust with respect to due diligence. I'm merely saying that because due diligence is the dispositive factor in this case, regardless of the regulation that's used, it's not as important the fact that she failed to exhaust the standard. What's more important is that regardless of the standard, she did not show any due diligence. Well, it is important to us. If we don't have jurisdiction – I'm not arguing that Your Honors don't have jurisdiction in regards to her case as a whole. Your Honors certainly have – So there are two issues, as I understand it. One has to do with the ineffective assistive counsel claim. The other has to do with the 180-day time limitation where the BIA used an incorrect legal standard. Is that right or wrong? There's two motions. There's the motion to – Two motions. Two motions. Correct. The motion to reopen in regards to changed country conditions, which I will address next, and the motion to reopen and rescind her in absentia – her in absentia order. Exclusion order. Her exclusion order. Correct. The motion to rescind requires that she be duly diligent in filing a motion. And therefore, because she has not shown due diligence, she cannot argue that she should be granted – Let me ask you as to that. Isn't your other argument that she failed to exhaust this argument? No, I'm simply arguing that even if she failed to exhaust the actual error that the Board made in applying a legal standard, due diligence applies to both of those standards. So it doesn't matter, actually, which standard the Board used. Due diligence is equally applicable to both standards. As the Singh case described, due diligence is important in the equitable tolling context in which there is a timeliness limitation and the petitioner is requesting to please toll that timeliness limitation, and due diligence is important in this situation in which there is no timeliness issue. Specifically, the other factors that show that Ms. Ahir was not duly diligent is the fact that upon learning that her counsel had passed and therefore she had no information about her case, she waited another two years before she hired Mr. Sarin and the motion to reopen was filed. That is also showing a lack of due diligence on her part. And this Court has held consistently that a petitioner who waits two years or longer to take steps to reopen a proceeding has failed to demonstrate that due diligence. Certainly, the Twomb case and the Ramsud case also present evidence that waiting a significant amount of time, such as 14 months or two years or longer, is not a duly diligent strategy. In this case, Ms. Ahir did not show the frequency of the phone calls that she made to her attorney. She did not inquire as to why her hearing had been taking more than a decade to be placed in a courtroom. She did not inquire as to why she was told that she had legal status in the United States and could stay here, as she claimed her attorney told her, despite the fact that she entered without any documentation and was told that there would be a removal order pending if she did not proceed and show the merits. As to her motion to reopen, as Your Honours did state, there is no changed country conditions in the record. She provided insufficient documents on that issue. She did not show a change between 1995 and 2012 when she filed her motion to reopen. And without that information, there is no prima facie case of asylum. There is no information regarding her fear of persecution, because it's not clear that she has any threat before her. I'm just curious, did the State Department country reports conditional notice behavior? Of the whole report? Well, the report dealing with India as to the issue of what the circumstances were in 1995. Well, there are no country conditions presented on the record. Yeah, but we can all sort of tell what the BJP was doing in 1995. Certainly, there... Court's indulgence. I believe we discussed this in our brief regarding judicial notice on page 15 of our brief. Certainly, judicial notice is taken, as is explained in the Latifi case, where a remand was otherwise warranted. But the government would present the argument that remand is not warranted here. This is a very clear cut based on all the cases on this circuit. She has gone well above and beyond the timeline or the margin of error presented, given to petitioners who are not in understanding the immigration process. She has waited over a decade to make any indications that she should maybe check on her case. Specifically, where in her motion to reopen, she even concedes that her own husband has been through this process. So she must have been aware that a petition for review or that an in absentia hearing would be pending, because her husband also had a petition for review before the Ninth Circuit on an in absentia issue. So it's not reasonable under the Wang test for an individual such as Nisahir to not have any idea at all of the steps that should be taken in order to file a motion to reopen and to complain against her former counsel for ineffective assistance. I ask you, what is the status of her husband? All I'm aware of is that the petition for review was denied in his case. That's my understanding, but I was not assigned to that matter, so I don't have any further details. So in the Ninth Circuit, was there an appeal? As far as I know, there was an unpublished decision. Everything is published. There's no such thing as an unpublished opinion, in the sense that it may not have precedential value. Correct. What was the result? That they denied the petition for review for a failure to show, a failure to rebut the presumption that he received notice of his hearing, because he also failed to appear for his removal hearing, and he was not able to rebut the presumption that it was mailed to him by certified mail. Thank you very much. Thank you. Thank you very much, Your Honor. Just to correct the record, she did hire another attorney. He couldn't find anything. She's done everything due diligently. I challenge anyone here to try to find a case without an A number. It was a jigsaw puzzle. It took us years to recreate this file. You have a person, you have a name, you don't know where this person is or where this person had their hearing, and to find that case takes a long time. And we asked, and we got help from the court, and she's shown due diligence at every stage, at every level. Counsel is also assuming facts stating that she knew. She knew nothing. Starting from day one, she had no certified interpreter. We don't even know who the interpreter is. The interpreter refuses to give the name, address. There's no way I can contact the interpreter to find out what interpretation that person did. The Immigration Naturalization Services used a non-certified interpreter, released a 16-year-old. She wasn't actually 16, but he believed she was 16, in the evening in New York and said come back for a hearing allegedly in two months. We don't know if that's true. She didn't speak a word of English. So this is all assumptions of facts by counsel. This woman has done everything diligently. She's raised her children. She is working on minimum wage. She has done everything to abide by the law. She has no criminal conduct. And she's exercised and hired three attorneys to present her case before you, and all she's asking is an opportunity to file for asylum. How old are her children? One child was born in 1997, one in 1999, so it would be 19, and the other one would be about 16. I don't know the answer to this question, because I don't know which of the panelists is taking immigration cases from the district court. But does the fact that she has an adult now, has an adult child, is there a potential for some sort of adjustment of status by the adult child? I don't know the answer. And is that somehow affected by the fact that this is an exclusion order as opposed to some other order? You're very knowledgeably, Your Honor, correct. If you're in an exclusion order, the only issue she can have and the only argument she can make is for asylum. Once the son is 21, he can petition for her. President Obama had an executive order which a judge in Brownsville denied, and there's a state order. She would have been allowed to stay under DAPA under that executive order. So that's the route, the DAPA route. It would have been in answer to the judge's question. So even though 18 would make him an adult, he couldn't until he was 21, is that it? He couldn't move for any kind of a—forget about the exclusion order for the moment. Under the I-130, under a petition for a family, you have to be 21, but under DAPA you could be any age. Well, for the moment, that doesn't exist. Correct. Is there any alternative to an exclusion order? To reopen it and let her proceed forward with her asylum case? To send it back to the BI? Suppose she lost again. Would it still be an exclusion order? I mean, is there any alternative? It's like a holding of removal. I'm just throwing out— Right. We raised that. We raised that in our papers, and the court said it didn't have jurisdiction. There was a law placed in effect by President Clinton before he left called repapering, where she can be repapered and allowed to file for documents in this country, because she's been here for over 20 years, is a person of good moral character, has two U.S.-born children. She'll be allowed to stay under that repapering route. But the court said it has no— I just want to understand what you just said. She's been here 20 years. Yes. So she has a remedy? She has a remedy if her case is reopened and sent back to the immigration court where we can work it out with the government to ask for her repapering. You would need to prevail here to reopen. Correct. That's the remedy. That is correct. We always need to prevail here before we can do anything else. What if we decided there was some procedural error in the BIA? Then it would go back to the immigration judge in New York, and then we'd do a change of venue and come bring it to LA, to Los Angeles, where she lives and where I've come from. I'm trying to figure out the impact on this billboard cast when Bill Clinton was president. It's still in effect? No, no. Repapering is still in effect? No, no. If we decided, for example, that the BIA was wrong when it said that she had not presented evidence that she was represented by an attorney, what effect would that have? For the moment, it would, I assume, set aside the exclusion order. It would set aside the exclusion order. She could reside with her children without fear of being picked up and arrested and deported? No, but suppose they said, okay, we apply the right. She was represented by an attorney. I mean, would that necessarily result in setting aside the exclusion order? The exclusion order. In other words, suppose they corrected this particular error. She would then file for asylum, Your Honor, before the immigration court, which would take time and would allow her to then adjust if there was some new law passed. But at this time, the only way she can remain in this country legally is if this issue is remanded back to the BIA. But the question is how material is that error that Judge Corman has identified that was made by the BIA in terms of the failure to present evidence? It was material because she had provided her affidavit where she provided the evidence of her well-founded fear, and she's put in her evidence over there what transpired. Don't we need to make a determination that it would have made a difference to the BIA in its decision? Her affidavit wasn't considered. That is correct. They didn't consider it. So if you're asking if there was prejudice, there was prejudice to her. How so, though? Because her mother was killed, and she hasn't presented that case of her fear of going back. When she came to this country in 1995, she said her mother was killed by the present ruling party of India. She has a fear of going back, and that hasn't been addressed ever, and neither has she been given an avenue to address that. Thank you very much. Thank you. What was your decision?